In re Craig S. WISEMAN and Rhonda
L. Wiseman, Debtors.

No. 13–51647.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Signed Aug. 7, 2014.

J. Matthew Fisher, Allen, Kuehnle Stovall & Neuman LLP, Columbus, OH, for Debtor.

## MEMORANDUM OPINION AND ORDER GRANTING THE UNITED STATES TRUSTEE'S MOTION TO DISMISS (DOC. NO. 21)

CHARLES M. CALDWELL,
Bankruptcy Judge.

This Memorandum Opinion and Order serves as the Court's findings of facts and conclusions of law for the above-captioned Motion to Dismiss filed by the United States Trustee ("UST"), and an Objection filed on behalf of Craig S. and Rhonda L. Wiseman ("Debtors"). The UST claims that the Debtors have sufficient net monthly income to pay their debts, and that receipt of a Chapter 7 discharge constitutes abuse, as provided in section 707(b)(3)(B) of the United States Bankruptcy Code ("Code").

Based on the evidence, including credibility assessments, the Court finds and concludes that Debtors have sufficient net monthly income to support a meaningful Chapter 13 plan of repayment, and that absent conversion to Chapter 13, dismissal of this case is appropriate. The Court's reasoning and decision follows.

The Debtors filed this Chapter 7 bankruptcy case on March 7, 2013. Slagle–Kaiser Dental Ceramics, Inc. employs both Debtors. Mr. Wiseman has worked there as a dental ceramist for three years, and Mrs. Wiseman has worked as a dental lab

technician for one year. The Debtors scheduled secured debts of $140,076.38, priority unsecured debts of $31,813.06 and general unsecured debts of $57,511.24. The Debtors listed one minor dependent, a ten-year-old son. Originally, the Debtors scheduled 401(k) retirement accounts of $12,330.31 in total, and scheduled $123,339.31, as the most recent year to date income for both. For combined average net monthly income, they listed $3,618.12, and detailed $3,215.16 as their average monthly expenses, resulting in net monthly income of $402.96, by their own admission.

The UST filed the instant Motion to Dismiss on May 28, 2013, and claimed the Debtors have the ability to repay creditors from their net monthly income, which the UST calculated actually to be $1,666.89, based upon its review of pay advices and recalculation of Debtors' tax liabilities. On December 23, 2013, the Debtors filed amended income and expense schedules. Their combined net average monthly income increased from $3,618.12 to $4,042.04, and their average monthly expenses increased from $3,215.16 to $3,976.49, still leaving $65.55 in monthly net income, by their own admission.

At trial Mr. Jeffrey Pfriem, Bankruptcy Analyst with the Office of the UST, testified from his review of the most recent pay advices, the Debtors now have approximately $7,500.00 in monthly gross income, with $4,908.72 in average net income after taxes and withholding. In this analysis, Mr. Pfriem excluded the $754.78 per month IRS garnishment that ceased with the bankruptcy filing. As referenced above, in their amended income and expense schedules, the Debtors listed $3,976.49 in monthly expenses; however, Mr. Pfriem could only find support for $3,876.49, reducing Debtors' home maintenance expenses by $100.00, based on documented expenses. With these adjusted income and expense figures, Mr. Pfriem testified that Debtors have at least $1,000.00 in net monthly income payable to creditors in a Chapter 13 plan.

Testifying about their income variations, Mr. Wiseman explained that the Debtors use their cars to travel approximately 45 minutes to work each day, and that these cars currently require repair, including shock absorbers, tires, a motor mount and new windshield. A neighbor currently provides childcare, in exchange for occasional food assistance. However, this person is looking for full-time employment that will lead to additional costs. The Debtors anticipate future dental expenses for braces, and Mr. Wiseman has a daughter who spends alternating weekends with the family. Mr. Wiseman testified that due to the financial condition of his employer, future bonuses, like the one for $1,000.00 most recently received, would be limited at best. However, Mr. Wiseman admitted that there has been no official notice of any downsizing. Further, on cross-examination, Mr. Wiseman did not dispute the UST's assertion that Debtors' gross income was $7,480.00 monthly.

Mr. Wiseman testified that he attempted to open and manage his own dental laboratory under the name, Pleasant View Dental Studio. After a few years, however, this business failed due to outsourcing and the faltering economy. This enterprise generated a significant amount of debt, including tax obligations that resulted in a garnishment for $754.78 per month. Once this garnishment ceased with the bankruptcy filing, the Debtors used these funds to make house, vehicle, and insurance payments. In addition, postpetition the Debtors purchased an additional vehicle from a friend for $900.00.

Next, as to family health and housing expenses, Mr. Wiseman testified that

their home expenses are a result of its age, as the house, constructed in 1823, needs significant repair and maintenance to remain habitable. The Debtors testified that within the last year they have had electrical, plumbing, and foundation problems. Specifically, Ms. Wiseman testified that the bathroom is unsafe due to the condition of the floor. Ms. Wiseman also testified regarding her recent diagnosis of Celiac disease, a digestive condition that requires changing her diet and causes increased doctor visits and medical tests. However, on cross-examination, Ms. Wiseman did not identify any planned tests or doctor visits, nor did she provide any evidence that her diagnosis had caused missed workdays.

■ Turning to the legal issues presented, section 707(b) of the Code provides for dismissal of Chapter 7 cases, or conversion to Chapter 13, if the Court finds that abuse exists. The UST does not claim in the instant case that the presumption of abuse arises under section 707(b)(2)(A)(i), and instead argues that the totality of the circumstances, including Debtors' ability to repay creditors a significant amount, requires dismissal. 11 U.S.C. § 707(b)(3)(B); *See In re Phillips,* 417 B.R. 30, 44 (Bankr. S.D.Ohio 2009). The UST must prove that abuse exists by a preponderance of the evidence. *In re Tucker,* 389 B.R. 535, 538 (Bankr.N.D.Ohio 2008).

■ Deciding whether abuse exists requires a wide-ranging view of debtors' financial circumstances, including debtors' reporting of their financial conditions at the time of filing, and any post-petition changes. *In re Pittman,* 506 B.R. 496, 499 (Bankr.S.D.Ohio 2014); *In re Goble,* 401 B.R. 261, 276 (Bankr.S.D.Ohio 2009). A key consideration is whether there is sufficient income to fund a meaningful distribution under Chapter 13 of the Code. *In re Goble* at 276.

The central question posed in this case is whether the Debtors have sufficient disposable income to fund a meaningful plan of reorganization. *See Phillips,* 417 B.R. at 39–40 (holding that evaluating a debtor's ability to pay must focus upon the financial circumstances at the time of trial, in addition to projected disposable income). To that end, after trial, the Court ordered the parties to file hypothetical plans of repayment demonstrating how Debtors might attempt debt reorganization under Chapter 13 of the Code. The UST submitted two hypothetical plans that proposed dividends of 69.50% or 100.00% to general unsecured creditors, at the respective rates of $1,483.00 and $2,118.00 per month. Most notably, the hypothetical Chapter 13 plan prepared for the Debtors offered a 45.00% dividend to general unsecured creditors, at the rate of $1,399.00 per month.

Review of the evidence presented at trial, the representations made by counsel at the trial and continued hearing, and the relevant legal standards demonstrate that the UST met its burden of proof that Debtors have excess net income each month that could support a significant plan of repayment. Both Debtors' and the UST's hypothetical plans recognize that the Debtors have excess net monthly income; the only argument between the parties is the amount. Debtors assert that they will have unexpected future expenses that would change the amount of their disposable income, but were unable to substantiate the amounts. Further, plan payment suspensions and modifications, claims objections and lien modifications are all an effective means to handle unforeseen life circumstances, and ensure creditors receive correct payment amounts, and in the right order.

For these reasons, the Court **GRANTS** the UST's Motion to Dismiss. **IT FUR-**

**THER ORDERED** that Debtors have 30 days from the entry of this Order to convert to a Chapter 13 proceeding. If Debtors fail to act within that time, the Court will dismiss this case without further notice or hearing.

**IT IS SO ORDERED.**